# NO. 12-21-00025-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EAST TEXAS SUPPORT SERVICES, INC.,*<br>*APPELLANT* | § | *APPEAL FROM THE 4TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *JUNE BROWN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JAMES BROWN, DECEASED,*<br>*APPELLEE* | | |
| | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

East Texas Support Services, Inc. (ETSS) appeals the trial court's order denying its motion to dismiss June Brown's suit against it. We affirm.

## BACKGROUND

ETSS is a company that contracts with Medical Transportation Management, Inc. (MTM) to deliver non-emergency medical transportation services. Clients who need transportation contact MTM to arrange a pickup or drop off. MTM then contacts a local company like ETSS, who provides a van to transport the client. ETSS does not receive any medical information about its clients. And in the case of an emergency, ETSS personnel are instructed to call 911 rather than render treatment.

On June 21, 2018, ETSS assigned one of its drivers, Evelyn Jernigan, to pick up and drop off James and June Brown. Jernigan drove the Browns to a doctor's appointment in Longview, Texas. After the appointment, the Browns contacted ETSS, and Jernigan returned to transport them back to their home in Overton, Texas.

1

During the ride, James requested Jernigan stop at the Overton Pharmacy to pick up prescriptions. Jernigan agreed to take the Browns to the pharmacy; however, she stated that she could not wait for them to retrieve their prescriptions and they would need to find another way home. The Browns retrieved their prescriptions and proceeded home on their motorized wheelchairs. To get home, the Browns had to cross railroad tracks. As the Browns were crossing the railroad tracks, James became stuck in the tracks while the crossing arms came down. June was able to clear the tracks, but James was struck and killed by the oncoming train.

On October 30, 2018, June filed a lawsuit against ETSS alleging that it was negligent in hiring, training, and supervising Jernigan.[1] She further alleges that ETSS was grossly negligent. On October 16, 2020, ETSS filed a motion to dismiss June's claims for failure to file an expert report under the Texas Medical Liability Act (TMLA). ETSS asserted that it is a "health care provider" under the TMLA and that June's claims constitute "health care liability claims." In response, June urged that neither ETSS nor MTM meet the definition of "health care provider" under the TMLA. Following a hearing, the trial court denied ETSS's motion to dismiss. This appeal followed.

## HEALTH CARE LIABILITY CLAIM

In its sole issue, ETSS argues the trial court erred in denying its motion to dismiss because it is a health care provider and Brown's claims are health care liability claims.

### Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See **Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios***, 46 S.W.3d 873, 875 (Tex. 2001); ***Cage v. Methodist Hosp.***, 470 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2015, no pet.). That said, whether a claim constitutes a health care liability claim is a question of law that we review de novo. ***Baylor Scott & White, Hillcrest Med. Ctr. v. Weems***, 575 S.W.3d 357, 363 (Tex. 2019). In determining whether a claim constitutes a health care liability claim, we consider the entire record, including the pleadings, motions, and responses, and relevant evidence properly admitted. ***Loaisiga v. Cerda***, 379 S.W.3d 248, 258 (Tex. 2012).

---

[1] June also sued Union Pacific Railroad Corporation and Union Pacific Railroad Company, and they are not parties to this appeal.

2

**Applicable Law**

Under the TMLA, a plaintiff whose claim constitutes a health care liability claim must serve an expert report, with a curriculum vitae for the expert whose opinion is offered, on a defendant physician or health care provider within 120 days of the filing of an answer by the defendant. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017); *see also* **Weems**, 575 S.W.3d at 360–61. If the plaintiff fails to timely serve an expert report, then on the motion of a defendant physician or health care provider, the trial court must dismiss the plaintiff's health care liability claim with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see also* **Weems**, 575 S.W.3d at 360–61.

The TMLA defines a "[h]ealth care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2017); *see also* **Ross v. St. Luke's Episcopal Hosp.**, 462 S.W.3d 496, 501 (Tex. 2015). Thus, we consider three basic elements in determining whether a plaintiff's claim constitutes a health care liability claim: (1) whether the defendant is a physician or health care provider; (2) whether the claim at issue concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety, or professional or administrative services directly related to health care; and (3) whether the defendant's act or omission complained of proximately caused the injury to the plaintiff. **Rio Grande Valley Vein Clinic, P.A. v. Guerrero**, 431 S.W.3d 64, 65 (Tex. 2014); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The TMLA creates a rebuttable presumption that a plaintiff's claim is a health care liability claim if it is brought against a physician or health care provider and "is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." **Loaisiga**, 379 S.W.3d at 256.

Here, June did not serve an expert report on ETSS at any time, so if Brown's claims against ETSS constitute health care liability claims, her suit must be dismissed. *See* **Weems**, 575 S.W.3d at 360–61, 363 (because plaintiff did not serve expert report, if plaintiff asserted health care liability claim, suit must be dismissed with prejudice).

3

**Health Care Provider**

ETSS argues that it constitutes a health care provider under the TMLA because its services are necessary for its customers' medical treatment. Additionally, it argues that it is an agent or independent contractor for a health care provider, MTM. In response, June urges that neither ETSS nor MTM are licensed by the State of Texas to provide healthcare.

The TMLA states in pertinent part:

> (A) "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including:
> > (i) a registered nurse;
> > (ii) a dentist;
> > (iii) a podiatrist;
> > (iv) a pharmacist;
> > (v) a chiropractor;
> > (vi) an optometrist;
> > (vii) a health care institution; or
> > (viii) a health care collaborative certified under Chapter 848, Insurance Code.
>
> (B) The term includes:
> > (i) an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and
> > (ii) an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12). The list of people and entities in the TMLA's definition of a "health care provider" is not exclusive, and a person or entity not specifically enumerated may still constitute a health care provider under the TMLA. *See Skloss v. Perez*, No. 01-08-00484-CV, 2009 WL 40438, at *3–6 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) ("The list of health care providers in section 74.001(a)(12) does not specifically include a[ ] [licensed professional counselor]; however, the list is non-exhaustive."); *Christus Health v. Beal*, 240 S.W.3d 282, 286–87 (Tex. App.—Houston [1st Dist.] 2007, no pet.), *abrogated on other grounds by Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171 (Tex. 2012); *see also Strobel v. Marlow*, 341 S.W.3d 470, 474–75 (Tex. App.—Dallas 2011, no pet.); *House of Yahweh v. Johnson*, 289 S.W.3d 345, 351 (Tex. App.—Eastland 2009, no pet.). The moving party has the burden of presenting evidence that the State of Texas has certified it as a healthcare provider. *See Beal*, 240 S.W.3d at 286-87; *Brown v. Villegas*, 202 S.W.3d 803, 806 (Tex. App.—San Antonio 2006, no pet.).

4

ETSS urges that it meets the definition of "healthcare provider" because its transportation services are essential or necessary for the provision of healthcare. Specifically, it contends that it is a "501(c)(3) tax-exempt charitable organization that provides non-emergency medical transportation to patients to and from their medical appointments." However, ETSS has not provided any license, certification, registration, or charter establishing its status as a health care provider. Therefore, the record is devoid of evidence that ETSS is "duly licensed, certified or registered or chartered by the State of Texas to provide healthcare." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A).

Furthermore, ETSS's argument might find stronger support if the TMLA's "health care provider" definition had referred to a person "licensed . . . by the State of Texas to provide *products or services that have some relationship to health care.*" *See **Verticor, Ltd. v. Wood***, 509 S.W.3d 488, 494 (Tex. App.—Austin 2015, pet. denied). But the Legislature did not write the statute that way—instead, it required that a "health care provider" be "licensed . . . by the State of Texas *to provide health care.*" *Id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12) (emphasis added). This phrasing indicates that ETSS's license, which the record contains no evidence of, must authorize it "to provide" something that is in itself "health care." *See id.*; *see also **Brown***, 202 S.W.3d at 806 (defendant laboratory and pathologist provided no evidence they were licensed healthcare providers); ***Doctors Data, Inc. v. Stemp***, No. 03-12-00079-CV, 2014 WL 3809742, at *3 (Tex. App.—Austin July 31, 2014, pet. denied) (mem. op.) (defendant laboratory was not licensed to provide health care); ***Obstetrical & Gynecological Assocs., P.A. v. Hardin***, No. 01-13-00236-CV, 2013 WL 6047595, at *3 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (mem. op.) (defendant provided no evidence it was licensed to provide health care).

Alternatively, ETSS urges that it is an agent of MTM, which it argues is a health care provider. The only evidence to support this assertion is the "Medical Transportation Services Agreement," which lists MTM as "a Missouri corporation." ETSS provided no evidence that MTM is licensed, registered, certified, or chartered by the State of Texas to provide health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12).

Because ETSS failed to prove that it is a health care provider for which an expert report is required, we do not address whether June's claims are health care liability claims. *See* TEX. R. APP. P. 47.1. No expert report was required because there is no evidence that ETSS is a licensed

health care provider.  Accordingly, we hold that the trial court did not abuse its discretion by denying ETSS's motion to dismiss.  We overrule ETSS's sole issue.

## DISPOSITION

Having overruled ETSS's sole issue, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 18, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 18, 2021**

**NO. 12-21-00025-CV**

**EAST TEXAS SUPPORT SERVICES, INC.,**
Appellant
V.
**JUNE BROWN, INDIVIDUALLY AND AS REPRESENTATIVE
OF THE ESTATE OF JAMES BROWN, DECEASED,**
Appellee

Appeal from the 4th District Court
of Rusk County, Texas (Tr.Ct.No. 2018-267)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed;** all costs of this appeal are assessed against Appellant, **EAST TEXAS SUPPORT SERVICES, INC.,** and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*